# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 16, 2005

## STATE OF TENNESSEE v. ROBERT K. WARD

### Direct Appeal from the Circuit Court for Sevier County
### No. 9429  Rex Henry Ogle, Judge

---

### No. E2004-01665-CCA-R3-CD - Filed December 29, 2005

---

The Defendant was convicted of aggravated rape, and the trial court sentenced him to sixty years, as a Range III, persistent, violent offender.  The Defendant appeals, contending that: (1) the trial court erred when it denied his motion to suppress his written statement to the police; (2) the record contains insufficient evidence to support his conviction; (3) the trial court improperly commented upon the testimony of a witness; and (4) the trial court improperly sentenced him.  After reviewing the record and the applicable law, we conclude that there exists no reversible error.  Accordingly, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined.  JOSEPH M. TIPTON, J., delivered a separate concurring opinion.

James R. Hickman, Jr., Sevierville, Tennessee, for the Appellant, Robert K. Ward.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Al C. Schmutzer Jr., District Attorney General; and  Joseph A. Baker, Assistant District Attorney General, for the Appellee, State of Tennessee.

## Opinion
## I. Facts

The following evidence was presented at the Defendant's trial for the aggravated rape of L.B.,[1] the victim:  L.B. testified that the Defendant is married to her sister, T. W., and that she baby-sat for their son, N.W., quite often.  On the day of this crime, but before it occurred, L.B. had taken N.W. to the Defendant's apartment after baby-sitting him.  She said that, earlier, she had seen her brother's car and her friends, Susan and Marty, at the Defendant's apartment.  She said that she

---

[1] In order to protect the privacy of the victim and her family, we will use initials instead of names where appropriate to do so.

walked with N.W. into the Defendant's apartment while her son slept in the car. She testified that, while she was inside the apartment, the Defendant approached her, put his arms around her, and asked for a hug. She tried to push the Defendant away, and she said, "No leave me alone." L. B. testified that she started struggling, and the Defendant picked her up, and threw her onto his sofa, where he continued to force himself on her while hitting her across the face and jerking at her clothes. L.B. testified that N.W. watched these events while sitting at a nearby table.

L.B. said the Defendant forced her onto the ground while she struggled and fought to get away. She testified that the Defendant got on top of her, kissed her, tried to take off her clothes, and he clutched her throat while she screamed and struggled. She said that the Defendant let go of her throat, but he continued to pull at her clothes and hair. At one point, she got up from the floor, but the Defendant grabbed the back of her neck and forced her onto the ground. She testified the Defendant forcefully pushed her into the ground, and she cut her arm while struggling against him. She said that she tried to get N.W. to go for help, and N.W. came over and yelled at the Defendant.

L.B. said the Defendant grabbed her and tried to force her into the bedroom while she held onto the doorway and tried to fight against him. She explained that the Defendant aggressively picked her up and dragged her into the bedroom. When the Defendant got her into the bedroom, he pushed her onto a small, unmade bed, pulled off her underwear, and pulled her to the edge of the bed. She said the Defendant then penetrated her vagina with his mouth while she screamed, cried, and begged him to stop. She said the Defendant penetrated her anus and her vagina with his fingers, and then he stopped because he saw blood. She said she asked the Defendant to leave her alone. L.B. said that she never consented to any sexual penetration by the Defendant. The Defendant then brought her a towel, and he followed her as she went into the bathroom. L.B. said that she got dressed, ran outside, and locked herself in the car. She said that the Defendant approached the passenger's side door and asked her not to call the police. L.B. testified that her brother then came up to her car, she told him that the Defendant had raped her, and her brother called the police.

L.B. identified photographs that a police officer took of her after this incident occurred. She said that the photographs showed that there were bruises on her face, an abrasion on her forehead, her eyes and neck were swollen, her left arm was bleeding, and her upper lip was bleeding. She testified that these photographs showed injuries she sustained from the Defendant, and they accurately depicted her condition on the day of the incident. On cross-examination, L.B. testified that she had not used any intoxicants on the day of the incident or before testifying at trial. She said that she was presently taking an anti-depressant, Paxcil CR, as prescribed by her doctor.

Susan Hedrick, a friend of the Defendant's wife, testified that she knew L.B. as T.W.'s sister. Hedrick explained that she was better friends with T.W. than she was with L.B. Hedrick testified that, on the day of the incident, she had been at the Defendant's apartment, and she went for a walk with her husband and L.B.'s brother. When she returned to the apartment, she saw L.B. sitting in her car and the Defendant standing next to the vehicle. Hedrick said that L.B. was crying hysterically, and, after L.B. explained what had happened, they called the police. On cross-examination, Hedrick testified that she was on her walk for over an hour. She said that, when they

found the victim at the Defendant's apartment, the victim's car door was closed, and the side window was open about three inches.

M.H., the brother of L.B. and T.W., testified that when he saw his sister in her car, he walked up to her, and she seemed distraught. The trial court asked M.H. to repeat himself, and M.H. reiterated that his sister seemed distraught. He said he asked his sister what was wrong, and she told him that the Defendant had raped her. No objections were made, but the trial court explained to the jury, sua sponte, that M.H.'s testimony fell within the excited utterance exception to the hearsay rule. M.H. said the Defendant was standing near the passenger's side of his sister's car when she said that he had raped her. M.H. said he looked at his sister closely, and he noticed that she was swelling and that some of her hair had been pulled out. He said that he then called the police, and they arrived a few minutes later.

Officer Sam Hinson, a detective with the Sevierville Police Department, testified that he received a call reporting that a rape had occurred. He said that he instructed a patrol officer to detain the Defendant and to have the victim transported to the hospital emergency room. He said that he went to the emergency room, obtained an oral statement from the victim, took photographs of the victim, and had the hospital nurses perform a sexual assault evidence collection kit on the victim. The officer testified that the photographs that he took of the victim contained images of substantial bruising to her left eye and cheek bone, swelling on the left side of her face, an abrasion on her neck, a laceration on her elbow, an abrasion on her left arm, a "busted" lip, and discoloration around her eyes. Officer Hinson also described a photograph that he took while in the Defendant's apartment. He explained that the photograph showed "blood on the mattress that [was] smeared or wiped off." The photographs were admitted into evidence.

Officer Hinson testified that the results collected from the sexual assault evidence collection kit included lachrymose, a component of saliva, found in vaginal swabs in the victim's underwear and that other DNA tests were inconclusive. The officer said that he did not know of any other substance besides saliva in which lachrymose could be found. He explained that no tests were performed on the bloodstained mattress, but he had "been on the job long enough to know blood" and what it looked like. Officer Hinson testified that he could not prove how long the alleged blood had been on the mattress.

Officer Hinson also testified that, after obtaining a statement from, and photographing L.B., he interviewed and obtained a statement from the Defendant. The following Statement, given by the Defendant and typed by Officer Hinson, was admitted into evidence:

> I have been advised of my Miranda Rights and this is a voluntary statement. It is Sunday, February 24 and I am at the Sevierville Police Department. Earlier this evening my sister in law, [L.B.], came to my apartment at 240 Hardin Lane to drop off [N.W.], my son. I had taken some Valium and drank some Long Island Iced Tea. I had also smoked two marijuana joints earlier. I was feeling pretty intoxicated. I tried to talk to her but she would not listen. We got in an argument. We were both

3

yelling and screaming. She raised her hand like she was going to hit me. I got mad and smacked her. She fell down. When she was down she was kicking at me and I smacked her with an open hand a couple of times. I just wanted her to listen to me and quit screaming at me. I was upset. She got up to go in the bathroom and look at her face. I was hollering at her but she wouldn't listen to me. We were fighting as we went into the bedroom. She smacked me and scratched me and I smacked her back. Once we were in the bedroom I took her pants down. I asked her why she didn't like me like she said before. When her pants were down I asked her if I could touch her and see how beautiful she was. She said she was on her period. I said okay. She said this couldn't happen because you're my brother in law. I asked her if I could taste her she laid back. I licked her vagina. At some point I fingered her, I'm not sure when. She said I was hurting her and had hurt her face. I stopped and realized what had happened. We got up together and went to the bathroom. I helped her clean up. She got dressed and we talked in the bathroom for a couple of minutes. She leaned on me and started crying. I said [L.B.], what have I done, I'm sorry. Please forgive me. Then we walked out together and we talked in her car for a few minutes. Then her brother walked up. I am still feeling a buzz. I am pretty high. I do not know exactly what I'm doing at this point in time. I'm not sure I'm doing the right thing here.

Before signing this statement, the Defendant wrote, "I am still not sure of what's happening with all this."

T.W., the Defendant's wife and L.B.'s sister testified that L.B. and the Defendant never liked each other. She testified that, in the past, L.B. had asked the Defendant for favors such as helping her move, and cleaning out her garage.

Based upon this evidence, the jury convicted the Defendant of aggravated rape.

## II. Analysis

On appeal the Defendant contends that: (1) the trial court erred when it denied his motion to suppress his written statement to the police; (2) the record contains insufficient evidence to support his conviction; (3) the trial court improperly commented upon the testimony of a witness; and (4) the trial court improperly sentenced him.

## A. Motion to Suppress

The Defendant contends that the trial court erred when it denied his motion to suppress the written statement that he gave to the police officers. The following evidence was presented at the hearing on the Defendant's motion to suppress: Jason Ballard, of the Sevierville Police Department, who arrested the Defendant on the day of this crime, testified that the Defendant did not appear to be intoxicated in any way because he did not stumble, have slurred speech, or have bloodshot eyes.

4

On cross-examination, the officer testified that he did not recall the exact sequence of events that occurred when he took the Defendant into custody or if he saw any liquor bottles in the apartment where the crime took place.

Officer Sam Hinson testified that, after he moved the Defendant from a holding cell to the officer's office, he witnessed the Defendant sign an "Admonition and Waiver of Miranda Rights." The officer said that he explained to the Defendant every term that was set out in the waiver, and the Defendant did not have any questions. Officer Hinson explained that he always told defendants that they have a right to a lawyer and that they do not have to speak to the officer if they so choose. He said that the Defendant made it very clear that the Defendant was aware of all his rights. Officer Hinson said that, after he interviewed the Defendant for a period of time, the Defendant decided to dictate a statement to him. He said that he spoke with the Defendant for a couple of hours before typing the Defendant's statement verbatim while the Defendant sat at his desk. Officer Hinson testified that the Defendant described the events of the day at length and in detail. He said that the Defendant did not appear to be intoxicated because he was rational and coherent, he never staggered when walking, he did not slur his speech, and he did not have bloodshot eyes. The officer stated that he was a graduate of the law enforcement academy where he was trained to detect if someone was under the influence of intoxicants.

On cross-examination, Officer Hinson testified that the Defendant was initially taken into custody at around 5:00 p.m., and he was placed in a holding cell while the officer obtained a statement from the victim. The officer said that he then removed the Defendant from the holding cell and took him to his office at around 7:40 p.m., where he immediately advised the Defendant of his Miranda rights. Officer Hinson denied telling the Defendant that he would not talk to him if the Defendant refused to sign the "Admonition and Waiver of Miranda Rights." Officer Hinson did not recall telling the Defendant how long the State would take to find an attorney for the Defendant.

Officer Hinson stated that he did not ask the Defendant if he was on any medication or under the influence of any drugs because those questions did not seem pertinent. He said that, after the Defendant said that he took Valium and drank alcohol earlier, he did not stop taking the statement because the Defendant did not seem intoxicated, and hours had passed since the Defendant had used any substances. Officer Hinson said that the Defendant had finished making the statement when the Defendant said, "I'm still feeling a buzz, I'm pretty high." After the Defendant said that, Hinson allowed him to read over the statement. Officer Hinson testified that the Sevierville Police Department did not have the technology to perform Breathalyzer tests and that, when the department deals with alcohol related charges, the department uses an Intoximeter located at the sheriff's department or has blood work performed in the emergency room at the hospital.

The Defendant contends that the trial court erred when it denied his motion to suppress the statement that he gave to the officers. Specifically, the Defendant alleges that his statement was not freely given due to his intoxicated state. The Defendant alleges that the officers did not use the procedural safeguards necessary to ensure that the Defendant's privilege against self-incrimination was secure. The Defendant further alleges that the officers were well aware of the Defendant's

5

intoxicated state of mind, but chose to ignore all indications that the he was not acting voluntarily, knowingly, or intelligently. The State argues that the Defendant failed to show that he actually was intoxicated when signing the statement, and he voluntarily gave the officers his statement.

The trial court denied the motion to suppress, stating:

> The Court must find that based upon the uncontradicted testimony of the two police officers who observed this [D]efendant, that he was properly Mirandized, he signed the Miranda Rights advisement. He likewise signed a statement that had been typed as per his instructions and he likewise made notations himself on that advice of rights.

> The Court finds that the statement in question was completely and totally voluntary and will be admissible for all lawful purposes at the trial of this case.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Where there is material evidence in the record that supports the findings of fact of the trial court, we are required to affirm that judgment. State v. Killebrew, 760 S.W.2d 228, 233 (Tenn. Crim. App. 1988). The application of the law to the facts found by the trial court are questions of law that this court reviews de novo. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000).

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V; see also Malloy v. Hogan, 378 U.S. 1, 6 (1964) (holding that the Fifth Amendment's protection against compulsory self-incrimination is applicable to the states through the Fourteenth Amendment); State v. Matthew Kirk McWhorter, No. M2003-01132-CCA-R3-CD, 2004 WL 1936389, at *41 (Tenn. Crim. App., at Nashville, Aug. 30, 2004), *no Tenn. R. App. P. 11 application filed*. Under Article 1, section 9 of the Tennessee Constitution, "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. "[T]he test of voluntariness for confessions under Article 1, section 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." State v. Crump, 834 S.W.2d 265, 268 (Tenn. 1992).

Generally, one must affirmatively invoke these constitutional protections. State v. McCary, 119 S.W.3d 226, 250 (2003). An exception arises, however, when a government agent makes a custodial interrogation. Id. Statements made during the course of a custodial police interrogation are inadmissible at trial unless the State establishes that the defendant was advised of his right to remain silent and his right to counsel and that the defendant then waived those rights. Miranda v.

6

Arizona, 384 U.S. 436, 471-75 (1966); see also Dickerson v. United States, 530 U.S. 428, 444 (2000); State v. Holt, No. M2001-00945-CCA-MR- CD, 2002 WL 31465263, at *2 (Tenn. Crim. App., at Nashville, Nov. 5, 2002) *perm. app. denied* (Tenn. Feb. 24, 2003). A defendant's rights to counsel and against self-incrimination may be waived as long as the waiver is made voluntarily, knowingly, and intelligently. Miranda, 384 U.S. at 478; State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992).

Intoxication or mental unsoundness does not render a confession invalid if the evidence shows that the confessor was capable of understanding and waiving his or her rights. State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985); State v. Green, 613 S.W.2d 229, 233 (Tenn. Crim. App. 1980). If a defendant understands his or her rights and is capable of making a narrative of past events, then the defendant's use of alcohol does not prevent the admission of the statement. State v. Michael Abernathy, No. 03C01-9111-CR-00372, 1992 WL 249575, at *6 (Tenn. Crim. App., Knoxville, Oct. 2, 1992), *perm. app. denied* (Tenn. Dec. 28, 1992). A statement should only be suppressed when an accused's faculties are so impaired that the confession cannot be considered the "product of a free mind and a rational intellect." Lowe v. State, 584 S.W.2d 239, 241 (Tenn. Crim. App. 1979).

In the case under submission, we conclude that the evidence in the record does not preponderate against the findings of the trial court. The Defendant failed to establish that his statement cannot be considered the "product of a free mind and a rational intellect." Although the Defendant stated that he was "still feeling a buzz," he recounted the events of the crime without displaying any signs of intoxication. The Defendant stated that he "did not know what was happening," but, after he gave Officer Hinson the statement, he displayed the ability to read the statement, sign it, and write additional language on the statement. None of the officers who witnessed the Defendant's behavior before or during the taking of his statement thought that the Defendant seemed intoxicated. Officer Hinson went through the necessary procedural steps to ensure that the Defendant understood his rights, reading him each right "line by line." The Defendant stated that he understood his rights and the consequences of waiving those rights. Thus, the Defendant was properly advised of his rights, displayed the capacity to understand those rights, and was not subject to coercion. The weight of the evidence does not preponderate against the trial court's determination that the Defendant's statement was "completely and totally voluntary." Therefore, this Court will not disturb the trial court's finding that the statement was admissible, and the Defendant is not entitled to relief on this issue.

## B. Sufficiency of the Evidence

The Defendant next contends that the evidence is insufficient to support his conviction for aggravated rape "because his conviction was based solely upon the victim's uncorroborated testimony which was so unreliable and contradictory that it provided an unsafe basis for the verdict." The Defendant further claims that the State failed to prove beyond a reasonable doubt that he sexually penetrated the victim. The State argues that the evidence is sufficient to support the jury's verdict. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are entrusted exclusively to the trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978); State v. Lon S. Walker, No. 01C01-9711-CR-00535, 1999 WL 219629, at *4 (Tenn. Crim. App., at Nashville, Apr. 16, 1999), perm. app. denied (Tenn. Oct. 11, 1999). In determining the sufficiency of the evidence, this Court does not re-weigh or reevaluate the evidence and may not substitute its inferences for those drawn by the trier of fact from circumstantial evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of the fact. Liakas, 286 S.W.2d at 859. This Court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Herrod, 754 S.W.2d 627, 632 (Tenn. Crim. App. 1988). It is well-settled law in Tennessee that "the testimony of a victim, by itself, is sufficient to support a conviction." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-13-502(a) defines aggravated rape as: "[U]nlawful sexual penetration of a victim by the defendant . . . accompanied by any of the following circumstances: . . . (2) The defendant causes bodily injury to the victim . . . ." Tenn. Code Ann. § 39-13-502(a)(2) (2003). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required . . . ." Tenn. Code Ann. § 39-13-501(7) (2003).

After a review of the record, we conclude that the evidence, viewed in the light most favorable to the state, supports the Defendant's conviction for aggravated rape. The evidence established that the Defendant both orally and digitally penetrated the victim. Further, it proved that the Defendant hit the victim, pulled her hair, clutched her throat and dragged her along the floor. As a result of the Defendant's actions, the victim suffered from swollen eyes and neck, and a bloody upper lip and arm. Accordingly, this evidence clearly shows that the Defendant physically attacked the victim, penetrated the victim's vagina and inflicted bodily injury upon the victim. We conclude

that sufficient evidence was presented to support the jury's verdict. The Defendant is not entitled to relief on this issue.

## C. Examination of Witness and <u>Sua</u> <u>Sponte</u> Jury Instruction

The Defendant next contends that he was denied due process of law and his right to a fair trial when the trial court commented <u>sua sponte</u> on hearsay evidence and on the testimony of a State witness. The State argues that the Defendant did not raise a contemporaneous objection to the jury charge at trial and did not raise an appropriate objection in his motion for new trial. The State further argues that the trial court did not engage in constitutionally impermissible judicial commentary on the evidence when it requested the State's witness to repeat an answer and then <u>sua</u> <u>sponte</u> explained a hearsay rule to the jury. We agree with the State.

At trial, M.H. testified that his sister said that the Defendant had raped her, and the defense made no objection to this testimony. The trial court then, <u>sua</u> <u>sponte</u>, instructed the jury as follows:

> Excuse me just a minute. Normally ladies and gentlemen, the statement by his sister is hearsay. There is an exception to that called an excited utterance. If a person – if, under the evidence, you found a person who was still laboring under an event, and that as a consequence of that event they were excited or otherwise distraught or whatever, and makes some spontaneous statement, he may testify to that.
>
> Certainly she has already testified to that, but it's for you to determine the truth of that, whether or not it was made, or the truth of it. That is your sole discretion. But he can testify to that.

The Tennessee Supreme Court has noted that "propriety, scope, manner, and control of the examination of witnesses is a matter within the discretion of the trial judge, which will not be interfered with in the absence of an abuse thereof. A wide discretion in this matter is necessarily left to the court." <u>Coffee v. State</u>, 216 S.W.2d 702, 703 (Tenn. 1949). The Court explained that:

> "[I]t is well established that in order to clarify matters which appear in doubt, or which are not brought out by counsel or made clear by the witness and would otherwise remain obscure, and to develop the facts fully when essential to the administration of justice, the trial court, at any stage of the examination, may put questions to the witness for the purpose of eliciting facts bearing on the issue; . . . ."

Id. at 702 (quoting 3 <u>Wharton's Criminal Evidence</u> § 1264, at 2131-32 (11th ed. 1935).

However, the trial court "must be careful not to express any thought that might lead the jury to infer the judge is in favor of or against the defendant in a criminal trial." <u>State v. Cazes</u>, 875 S.W.2d 253, 260 (Tenn. 1994). In all cases the trial judge must be very careful not to give the jury any impression

as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury. State v. Shuttles, 767 S.W.2d 403, 407 (Tenn. 1989).

Hearsay evidence is generally inadmissible due to its unreliable nature. State v. Jimmy Lee Jones, No. 01C01-9511-CR-00367, 1997 WL 59446, at *4 (Tenn. Crim. App., at Nashville, Feb. 12, 1997), *perm. app. denied* (Tenn. Jan. 5, 1998); see Tenn. R. Evid. 802. However, the reliability and circumstantial guarantees of trustworthiness of particular non-testimonial statements have allowed courts to make limited exceptions to the hearsay rule. See State v. Gomez, 163 S.W.3d 632, 641 (Tenn. 2005). One such exception is the "excited utterance" exception. An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." See Tenn. R. of Evid. 803(2).

It is not an abuse of discretion for the trial court to, sua sponte, "require that counsel avoid compound questions, base his questions on facts in proof, limit hearsay testimony to allowable exceptions, and permit the witness to finish an answer without interruption." State v. Alberto Baretta Estes, No. 02C01-9512-CC-00379, 1997 WL 119510, at *3 (Tenn. Crim. App., at Jackson, Mar.18, 1997), *no Tenn. R. App. P. 11 application filed* (citing Tenn. R. Evid. 611(a)).

Initially, we note that the appellant waived his right to raise this issue on appeal because he failed to object to the instruction at trial. Walker, No. 01C01-9711-CR-00535, 1999 WL 219629, at * 5 (Tenn. Crim. App., at Nashville, Apr. 16, 1999), *perm. app. denied* (Tenn. Oct. 11, 1999). Notwithstanding waiver, we find that the Defendant's arguments are without merit. After our review of the record, we find no evidence of prejudice due to the trial court's comment on hearsay and the question posed to the State's witness. The jury instruction was perfectly proper in light of the hearsay testimony that was presented because the trial court correctly instructed the jury as to the applicable law regarding excited utterances. The trial court acted within its discretion when it ensured that the jury understood why the testimony was allowed as an exception to the hearsay rule. Likewise, the trial court acted within its discretion when asking the State's witness to repeat himself. Nothing in the record indicates that the trial court's question or comments caused the jury to infer that the trial court judge was in favor of or against the Defendant. For the same reasons, we reject the Defendant's argument that the trial court committed plain error. See Tenn. R. Crim. P. 52(b). Therefore, the Defendant is not entitled to relief on this issue.

### D. Sentencing

The Defendant next contends that the trial court erred when it enhanced his sentence because: (1) the State failed to give him the required ten-day notice before trial of its intent to seek sentencing of the Defendant as a Range III, persistent offender; (2) the trial court considered enhancement factors that were elements of the crime of aggravated rape or otherwise improper; and (3) that the trial court's application of enhancement factors to his sentence is inappropriate in light of Blakely v. Washington, 542 U.S. 246 (2004). The State argues that it complied with the notice requirement, that the trial court properly enhanced the Defendant's sentence, and that the enhancement factors

were appropriate under Blakely.

At the sentencing hearing, the parties agreed that the Defendant was a Range III, persistent offender. The Defendant conceded that the State had filed a motion to seek enhancement and that he was being convicted of aggravated rape because bodily injury was inflicted upon the victim. After considering the evidence presented at the sentencing hearing, the trial court found that:

> The Defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range, which is, by agreement, Range 3. The Court finds that the Defendant has a previous history of unwillingness to comply with his conditions of release into the community. He has several violations of probation on his record.

> The Court notes in passing that this Defendant committed this act in the presence of minor children. In fact, the victim in this case, I believe, was bringing his child back home. . . .[H]ad brought them food and was bringing them back home, to his home, and committed this act.

> To be real candid with you, this is one of the most brutal rape cases that this Court has heard; in its tenor, in the actions, in the dragging of the victim, and in the presence of these children. The Court finds that there are no mitigating factors.

> That this – and that based upon the enhancement factors that this Court has found, from the totality of the circumstances of the facts in this case, the Court hereby sentences this Defendant to the maximum term of 60 years.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). When conducting de novo review, this Court must consider: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any mitigating or statutory enhancement factors; (6) any statement that the defendant made on his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-237 (Tenn. 1986). Because our review of the record indicates that the trial court in the case under submission considered the sentencing principles and all relevant facts and circumstances, we review its sentencing determinations de novo with a presumption of correctness.

11

Aggravated rape is a Class A felony. Tenn. Code Ann. § 39-13-502(b) (2003). The sentencing range for a Range III, persistent offender convicted of a Class A felony is forty to sixty years with the presumptive sentencing starting at the mid-point of fifty years. Tenn. Code Ann. § 40-35-112(c)(1). For the aggravated rape of L.B., the trial court sentenced the Defendant as a Range III, persistent offender to sixty years of incarceration.

### a. Notice of Intent to Seek Enhanced Punishment

The Defendant contends that the trial court erred by sentencing him as a Range III, persistent offender because the State failed to provide sufficient notice of its intention to seek enhanced punishment. The State submits that it complied with the notice requirement and that the defendant acknowledged that he received the notice of intent to seek enhanced punishment. The Defendant concedes that he did not raise this issue at trial.

In Tennessee, a criminal defendant has the right to receive notice when the State intends to seek sentencing of a defendant as a multiple, persistent, or career offender. According to Tennessee Code Annotated section 40-35-202(a) (2003):

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea.

If notice is filed late or is filed timely but is otherwise defective, the defendant must show prejudice before the notice will be rendered ineffective. See, e.g., State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1988); State v. Debro, 787 S.W.2d 932, 933-34 (Tenn. Crim. App. 1989). Notice of intent to seek enhanced punishment given as to an offense charged in the original indictment is also valid notice as to any superceding indictment for the same offense or offenses included in the original indictment, but is not necessarily valid notice of intent to seek enhanced punishment for new offenses charged in the superseding indictment. State v. Carter, 121 S.W.3d 579, 585 (Tenn. 2003). The purposes of the notice requirement are satisfied when the defendant is not misled or surprised by the State's decision to seek enhanced sentencing. State v. Chase, 873 S.W.2d 7, 9 (Tenn. Crim. App. 1993). The Supreme Court of Tennessee has held that:

> In the absence of a motion for continuance . . . any objection to the delayed notice by the State ordinarily should be deemed to have been waived. This result is especially true . . . where the matter was not even raised in the trial court, at the sentencing hearing or on the motion for new trial.

State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1988).

In Stephenson, the court also noted that the defendant's failure to move for a continuance or a postponement of the trial, as authorized under Tennessee Rule of Criminal Procedure 12.3(a), indicated that the defendant had received effective notice. Id; Tenn. R. Crim. P. 12.3(a).

The Defendant conceded at his sentencing hearing that he had received notice of the State's intent to seek enhanced punishment and told the trial court "the State did file a notice of intent to seek enhancement. That should be in the Court's file. I have a copy if the Court would like to borrow mine." The Defendant failed to file a motion for continuance or postponement of the trial and failed to raise the issue in his motion for new trial. We note that a party must take all actions necessary to have an error corrected at the trial court. Tenn. R. App. P. 36(a).

Furthermore, the evidence in the record indicates that the Defendant had notice of the State's intent to seek enhanced punishment. The record shows that the Defendant was indicted for rape on May 28, 2003, in Indictment number 8924. On January 21, 2004, the State filed a "Notice of Intent to Seek Enhanced Punishment - Notice of Enhancing Factors." The record on appeal shows that the Defendant was sentenced in Indictment number 9429 on May 21, 2004, and that the trial court dismissed Indictment number 8924 on May 21, 2004. Both indictments were pending at the time of the Defendant's trial. Unlike the defendant in Carter, the Defendant in this case was not charged with a new, separate offense. The Defendant was originally indicted for the rape of L.B. and the superceding indictment was for the aggravated rape of L.B. The identical dates of the offenses charged and the circumstances of the offenses charged in both indictments sufficiently placed the Defendant on notice that the State was seeking to enhance his sentence for the aggravated rape of L.B., if the Defendant was convicted. Also, in the Defendant's brief, he acknowledges that he conceded to his status as a Range III, persistent offender prior to his sentencing hearing for the conviction in Indictment number 9429. The Defendant explained that, in exchange for a *nolle prosequi* on Indictment number 9497 for allegedly raping S.M. in jail, he agreed to concede that he was a Range III, persistent offender for sentencing purposes in the case under submission. The Defendant explains that a judgment reflecting this agreement was entered in on May 21, 2004. Therefore, the Defendant had proper notice of the State's intention to seek the sentencing of the Defendant as a Range III, persistent offender. We find that the Defendant is not entitled to relief on this issue.

### b. Enhancement Factors

The Defendant contends that the trial court erred in applying enhancement factor (2), that the defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range, and enhancement factor (9), that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving the release in the community. See Tenn. Code Ann. § 40-35-114(2) and (9) (2003). Specifically, the Defendant alleges that there was no documentation produced to prove his convictions or charges for violation of probation and no witnesses were called to prove the underlying facts to support the grounds for those charges. The

State contends that the trial court properly applied these two enhancement factors and that the sentence imposed by the trial court is justified. We agree with the State.

A trial court may rely on the contents of the presentence report where the report indicates that it is based upon reliable sources or is otherwise accurate. State v. Richard Crossman, No. 01C01-9311-CR-00394, 1994 WL 548712, at *6 (Tenn. Crim. App., at Nashville, Oct. 6, 1994), *perm. app. denied* (Tenn. Jan. 3, 1995). In Crossman, this Court explained that "we do not believe that the legislature contemplated that a trial court must exclude from the evidence or refuse to consider information about prior convictions solely because it is only contained in a presentence report." Id. In the case under submission, the evidence in the record does not preponderate against the trial court's finding that enhancement factors (2) and (9) are applicable. The presentence report contains reliable evidence of the Defendant's prior convictions and probation violations. Nothing in the record suggests that the information in the presentence report is inaccurate. Therefore, the Defendant is not entitled to relief on this issue.

The Defendant also asserts the trial court erred when considering enhancement factor (7), the Defendant's commission of the crime was to gratify the desire for pleasure or excitement, and enhancement factors (12) and (16), which address the Defendant's infliction of bodily injury upon the victim. Specifically, the Defendant asserts that these factors are elements of the offense charged and cannot be considered for sentencing purposes. The Defendant also argues that use of enhancement factor (5), that the Defendant treated the victim with exceptional cruelty during the commission of the offense, was improper. However, a careful reading of the findings of the trial court indicates to us that, while the trial court commented briefly about the circumstances of the offense, it actually applied only enhancement factors (2) and (9). Based upon two enhancement factors and finding no mitigating factors, the trial court enhanced the Defendant's sentence from fifty to sixty years.

Having conducted a de novo review of the record with a presumption that the trial court's determinations are correct, we find that the trial court properly sentenced the Defendant. Therefore, the Defendant is not entitled to relief on this issue.

### c. **Blakely v. Washington**

The Defendant contends that his sentence should be reduced to the statutory minimum because the enhancement factors must be either admitted by the Defendant or found, beyond a reasonable doubt, by a jury in light of Blakely v. Washington, 542 U.S. 246 (2004). In State v. Gomez, the Tennessee Supreme Court concluded that Blakely does not apply to Tennessee's sentencing scheme because "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." Gomez, 163 S.W.3d at 651 n.16. Thus, the Defendant is not entitled to relief on this issue.

14

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE